WEBSTER C. PERKINS *vs.* FREMONT PENDLETON, and others.

Waldo.    Opinion April 9, 1897.

*Action. Master and Servant. Labor Union. Pleading.*

For a person to wrongfully, that is by the employment of unlawful or improper means, induce a third party to break a contract with the plaintiff, whereby injury will naturally and probably, and does in fact, ensue to the plaintiff, is actionable; and the rule applies both upon principle and authority as well to cases where the employer breaks his contract as where it is broken by the employee,—in fact it is not confined to contracts of employment.

Whenever a person, by means of fraud or intimidation, procures, either the breach of a contract or the discharge of a plaintiff from an employment, which but for such wrongful interference would have continued, he is liable in damages for such injuries as naturally result therefrom; and the rule is

the same whether by these wrongful means a contract of employment, definite as to time is broken, or an employer is induced, solely by reason of such procurement to discharge an employee whom he would otherwise have retained, even if the terms of the contract of service are such that the employer may do this at his pleasure, without violating any legal right of the employee.

Merely to induce another to leave an employment or to discharge an employee, by persuasion or argument, however whimsical, unreasonable or absurd, is not in and of itself unlawful, and the court does not decide that such interference may become unlawful by reason of the defendant's malicious motives, but simply, that to intimidate an employer by threats, if the threats are of such a character as to produce this result, and thereby cause him to discharge an employee, whom he desired to retain and would have retained, except for such unlawful threats, is an actionable wrong.

*Held;* that a cause of action in this case is sufficiently stated in the declaration.

ON EXCEPTIONS BY DEFENDANTS.

This was an action on the case for wrongfully causing the plaintiff to be discharged while an employee of the Mount Waldo Granite Company.

The defendants took exceptions to overruling a demurrer to the declaration.

DECLARATION.

In a plea of the case, for that the plaintiff on the last day of May, A. D. 1895, and for twenty-two years prior to that time, had been at work for and employed by the Mount Waldo Granite Company, a corporation duly existing according to law and having an established place of business at said Frankfort, in the business of cutting stone for said Mount Waldo Granite Company, and was making large profits out of his said employment as a stone cutter, working by the piece, cutting stone for said company, to wit, making the sum of two dollars and seventy cents per day ; and the plaintiff alleges that he would have continued to work for said Mount Waldo Granite Company in the business of stone cutting, making large profits as aforesaid, in his said employment as a stone cutter for said Mount Waldo Granite Company, from the last day of May, A. D. 1895, to the twenty-sixth day of November, A. D. 1895, but for the wrongful acts, inducements, threats, persuasions and grievances committed by said defendants against the said plaintiff as hereinafter set forth. And the plaintiff avers that the said

defendants, on the said last day of May, A. D. 1895, and at divers times thereafter until the date of the plaintiff's writ, with divers other persons whose names are unknown to the plaintiff, all as members of the Mt. Waldo branch of the Granite Cutters' National Union, did unlawfully and without justifiable cause, molest, obstruct and hinder the plaintiff from carrying on his said trade, occupation or business as a stone cutter for the said Mount Waldo Granite Company, and wrongfully, unlawfully, and unjustly had him discharged without any justifiable cause from the employment of the said Mount Waldo Granite Company by wilfully threatening, persuading, inducing and by other overt acts, compelling the said Mount Waldo Granite Company, against its will and without any desire on its part so to do, to discharge the said plaintiff from its employ for the sole reason that the plaintiff would not become a member in the order of the Mount Waldo Branch of the Granite Cutters' National Union; whereby and by reason of the unlawful acts, threats, inducements and persuasions of the said defendants and divers other persons to the plaintiff unknown, acting as members of said Mount Waldo Branch of the Granite Cutters' National Union, the said plaintiff lost his said employment and the compensation which he would have received therefor as aforesaid, to wit, the sum of two dollars and seventy cents per day from said last day of May, A. D. 1895, amounting to the sum of four hundred and twenty-three dollars and ninety cents, all of which injury the plaintiff has suffered through the wrongful acts, inducements, persuasions and threats of the said defendants and divers other persons whose names are unknown to the plaintiff, acting as members of the Mount Waldo Branch of the Granite Cutters' National Union, and through no fault of his and through no fault of the said Mount Waldo Granite Company, but solely through the unlawful acts, persuasions, threats, inducements, molestations and hindrances of the said defendants as aforesaid, whereby and by reason of which the said plaintiff lost his employment as aforesaid, and all the advantages and profits that he would otherwise have made and received from the service and employment in which he was.

And the plaintiff alleges that from the said last day of May, A.

D. 1895, to the said twenty-sixth day of November, A. D. 1895, he has been unable to procure work as a stone cutter from the Mount Waldo Granite Company, although said Mount Waldo Granite Company has ever been ready and willing to employ him were it not for the aforesaid acts, inducements, persuasions, threats, molestations, and hindrances of the said defendants; whereby and by reason of which said plaintiff has been greatly damaged by the wrongful acts of the said defendants, all of which is to the damage of the plaintiff, as he says, in the sum of one thousand dollars.

*P. H. Gillin and R. F. Dunton,* for plaintiff.

*W. H. Fogler and W. P. Thompson,* for defendants.

As the Granite Company was under no obligation to continue the plaintiff in its employment, but had the right to discharge him at will, no action is maintainable against the defendants for inducing the company, even by threats, to discharge him from its employment.

The allegation that the plaintiff "would have continued to work for" said Company is not equivalent to an allegation of an obligation on the part of the company to employ him. At most it avers an expectation merely of employment. The plaintiff had no legal rights which could be affected adversely or otherwise by any acts of the defendants.

The declaration does not allege that the defendants made any threat to the plaintiff, or did any overt act against him, or addressed or directed to him any persuasions or inducements, which caused or contributed to his discharge or employment.

It is not averred in the declaration that the defendants made any threat of injury or used intimidation or force. The civil rights and remedies of employers and of employees are unaffected by the terms of the statute of 1896, c. 127.

The declaration does not charge conspiracy on the part of the defendants nor any unlawful combination, but merely joint acts.

Counsel cited: *Heywood* v. *Tillson,* 75 Maine, 225, and cases cited; *Boston Glass Manufactory* v. *Binney,* 4 Pick. 425; *Com* v. *Hunt,* 4 Met. 111; *Bowen* v. *Matheson,* 14 Allen, 499.

SITTING: PETERS, C. J., EMERY, WHITEHOUSE, WISWELL, STROUT, JJ.

WISWELL, J.   To the plaintiff's declaration, which appears in full in the statement of the case, the defendants filed a general demurrer, which was overruled by the justice presiding at nisi prius, and the declaration adjudged good.   The case comes to the law court upon exceptions to this ruling.

The plaintiff alleges that upon a certain day he was, and for twenty-two years prior to that time had been, in the employ of the Mount Waldo Granite Company as a stone cutter, working by the piece; that he was making large profits out of his employment; that he would have continued in such employment from the day named until the date of his writ, "but for the wrongful acts, inducements, threats, persuasions and grievances committed by said defendants against the said plaintiff as hereinafter set forth;" that on the day named, and "at divers other times thereafter until the date of the plaintiff's writ," the defendants "did unlawfully and without justifiable cause, molest, obstruct and hinder the plaintiff from carrying on his said trade, occupation or business as a stone cutter for the said Mount Waldo Granite Company, and wrongfully, unlawfully and unjustly had him discharged without any justifiable cause from the employment of the said Mount Waldo Granite Company by wilfully threatening, persuading, inducing and by other overt acts, compelling the said Mount Waldo Granite Company, against its will and without any desire on its part so to do, to discharge the said plaintiff from its employ for the sole reason that the plaintiff would not become a member in the order of the Mount Waldo Branch of the Granite Cutters' National Union;" whereby he suffered the injury specially set out in his declaration.   Does this statement of facts sufficiently set out an actionable wrong upon the part of the defendants?

That an action lies under certain circumstances for procuring a third person to break his contract with the plaintiff, has been frequently decided by the courts of England and of this country.

In *Lumley* v. *Gye*, 2 E. & B. 216, decided in 1853, the action

was for knowingly and maliciously inducing an opera singer to break her contract with the plaintiff to perform exclusively for a certain time in his theatre.   The right of action was sustained by a majority of the court.

In *Bowen* v. *Hall*, 6 Q. B. D. 333, decided in 1881, a person had contracted to manufacture glazed bricks for the plaintiff and not to engage himself to any one else for a term of five years, the English Court of Appeals held that an action could be maintained against the defendant for maliciously procuring a breach of this contract, provided damage accrued; and that to sustain the action it was not necessary that the employer and employee should stand in the strict relation of master and servant.   It was said by the court in this case: "That wherever a man does an act which in law and in fact is a wrongful act and such an act as may, as a natural and probable consequence of it produce injury to another, and which in the particular case does produce such an injury, an action on the case will lie. . . . . If these conditions are satisfied, the action does not the less lie because the natural and probable consequence of the act complained of is an act done by a third person; or because such act so done by the third person is a breach of duty or contract by him, or an act illegal on his part, or an act otherwise imposing an actionable liability on him. . . . Merely to persuade a person to break his contract may not be wrongful in law or fact, . . . . but if the persuasion be used for the indirect purpose of injuring the plaintiff or of benefiting the defendant at the expense of the plaintiff, it is a malicious act which is in law and in fact a wrong act and therefore an actionable act if injury ensued from it."

The doctrine of these cases has been very generally adopted, and the cases themselves very frequently cited by the courts of this country.   *Walker* v. *Cronin*, 107 Mass. 555; *Bixby* v. *Dunlap*, 56 N. H. 456 (22 Am. Rep. 475); *Noice* v. *Brown*, 39 N. J. Law, 569; *Haskins* v. *Royster*, 70 N. C. 601, (16 Am. R. 780); *Daniel* v. *Swearengen*, 6 S. C. 297 (24 Am. R. 471).

In view of these authorities and others which it is not necessary to refer to, it must be conceded that for a person to wrongfully,

that is by the employment of unlawful or improper means, induce a third party to break a contract with the plaintiff, whereby injury will naturally and probably, and does in fact, ensue to the plaintiff, is actionable; and the rule applies both upon principle and authority as well to cases where the employer breaks his contract as where it is broken by the employee,—in fact it is not confined to contracts of employment.

But in this case the plaintiff does not allege that the Mount Waldo Granite Company was induced by the wrongful means adopted by the defendants to break a contract, nor that there was any contract between the plaintiff and the employer for any definite time. We must therefore assume that there was none, that either party had the right to terminate the employment at any time, and that the act of the Mount Waldo Company in discharging the plaintiff was lawful, and one which the company had a perfect right to do at any time. The question presented then is whether a person can be liable in damages for inducing and persuading, by threats or other unlawful means, an employer to discharge his employee when the terms of the contract of service are such that the employer may do this at his pleasure, without violating any legal right of the employee. The question is a novel one in this state, but it has already arisen and been passed upon by the courts of some other states.

In *Walker* v. *Cronin*, 107 Mass. 555, the plaintiffs alleged that the defendant did "unlawfully and without justifiable cause, molest, obstruct and hinder the plaintiffs from carrying on" their business of manufacture and sale of boots and shoes, "with the unlawful purpose of preventing the plaintiffs from carrying on their said business, and wilfully persuaded and induced a large number of persons who were in the employment of the plaintiff," and others "who were about to enter into" their employment, "to leave and abandon the employment of the plaintiff, without their consent and against their will," and alleged that the plaintiffs lost the services of said person and the profits and advantages they would otherwise have made, and suffered losses in their business. It will be noticed that there is no allegation here of any definite contract as to time

between the plaintiffs and their employees who were induced to leave their employment, and one ground of action was that certain persons who were about to enter into their employment, but who had not commenced at the time, were induced to leave and abandon the employment of the plaintiffs. But the court held in an exhaustive opinion which has been frequently cited by other courts in this country and which was cited by counsel in the argument in *Bowen* v. *Hall*, supra, that the action could be maintained. It is said in the opinion: "This (declaration) sets forth sufficiently (1) intentional and wilful acts (2) calculated to cause damage to the plaintiffs in their lawful business, (3) done with the unlawful purpose to cause such damages and loss, without right or justifiable cause on the part of the defendant, (which constitutes malice), and (4) actual damage and loss resulting." The court quotes the general principles as announced in Comyns' Digest, Action upon the Case: " In all cases where a man has a temporal loss or damage by the wrong of another he may have an action upon the case to be repaired in damages." And goes on to say that " the intentional causing of such loss to another, without justifiable cause, and with a malicious purpose to inflict it, is of itself a wrong." Later in the opinion the court uses this language: " Every one has a right to enjoy the fruits and advantages of his own enterprise, industry, skill and credit. He has no right to be protected against competition; but he has a right to be free from malicious and wanton interference, disturbance or annoyance. If disturbance or loss come as a result of competition or the exercise of like rights by others, it is damnum absque injuria, unless some superior right by contract or otherwise is interfered with. But if it come from the merely wanton or malicious acts of others, without the justification of competition or the service of any interest or lawful purpose, it then stands upon a different footing, and falls within the principle of the authorities first referred to."

This case was not decided upon the ground that the plaintiffs could recover for the loss of the value of actual contracts, by reason of their non-fulfillment, because so far as the case shows there was no breach of contract, but the gravamen of the action was, as

expressed by the court, " the loss of advantages, either of property or of personal benefit, which, but for such interference, the plaintiff would have been able to attain or enjoy."

In *Chipley* v. *Atkinson*, 23 Fla. 206, (11 Am. St. R. 367) the court decided that although no contract existed between the master and servant and no legal right as between them was violated, still the servant may maintain an action for damages against a third person who has maliciously procured his discharge.   The court in its opinion, after quoting freely from *Walker* v. *Cronin*, supra, and after referring to numerous other authorities, says :   " From the authorities referred to in the last preceding paragraph, and upon principle, it is apparent that neither the fact that the term of service interrupted is not for a fixed period, nor the fact that there is not a right of action against the person who is induced or influenced to terminate the service or to refuse to perform his agreement, is of itself a bar to an action against the third person maliciously and wantonly procuring the termination of or a refusal to perform the agreement.   It is the legal right of the party to such agreement to terminate it or refuse to perform it, and in doing so he violates no right of the other party to it; but so long as the former is willing and ready to perform, it is not the legal right, but is a wrong on the part of a third party to maliciously and wantonly procure the former to terminate or refuse to perform it."

In *Lucke* v. *Clothing Cutters and Trimmers Assembly*, 77 Md. 396, decided in 1893, the action was to recover damages for the wrongful and malicious interference of the defendant, by means of which the plaintiff was discharged from his employment and thereby deprived of his means of livelihood.   The defendant, a labor organization, gave notice to the plaintiff's employers that in case the plaintiff, a non-union man, was longer retained, it would be compelled to notify all labor organizations of the city that their house was a non-union house.   The work of the plaintiff was entirely satisfactory to his employers, who intended to retain him permanently, but who in their contract reserved the right to discharge him at the end of any week.   The court decided that the action could be maintained and damages recovered from the defen-

dant for maliciously and wantonly procuring his discharge. In that case the declaration alleged the procurement of a breach of contract by the wrongful acts of the defendant; the court held that the evidence did not sustain the declaration but allowed an amendment, saying: "If there was no agreement for any particular period of time, but the employment was one in which the agreement was that plaintiff should be given employment as long as he performed his work satisfactorily, and he has been discharged from it solely through the malicious and wrongful procurement of the defendant, and injury has resulted, he should have laid his case accordingly." We also quote from the same opinion, the following: "The appellant by the action of the appellee, lost his place in the month of February, and, although persistently in quest of a position, he did not succeed in obtaining work until the following April, when he secured employment with a merchant tailor at five dollars less per week than he was receiving when he was discharged. It would be strange, indeed, if the law, under such a state of facts as this record exhibits, provided no remedy." In this latter case *Chipley* v. *Atkinson,* supra, is quoted and expressly approved.

In *Raycroft* v. *Tayntor,* 68 Vt. 219, decided in 1896, it was held, that one who procures the discharge of an employee, not engaged for any definite time, by threatening to terminate a contract between himself and the employer, which he had a right to terminate at any time, is not subject to an action by the employee for damages, whatever may have been his motive in procuring the discharge. But the doctrine of the latter cases cited in this opinion was expressly recognized and approved by the court in this language: "The authorities cited for the plaintiff clearly establish that if the defendant, without having any lawful right, or by an act or threat aliunde the exercise of a lawful right, had broken up the contract relation between the plaintiff and Libersont, maliciously or unlawfully, although such relation could be terminated at the pleasure of either, and damage had thereby been occasioned, the party damaged could have maintained an action against the defendant therefor."

In *Harvester Co.* v. *Meinhardt*, 24 Hun, 489, the court said :
" A distinction has been sought to be made between the cases
where there has been an unexpired time-contract and cases where
the services were by the day, or by the piece, but I do not think
such distinction rests upon any sound reason. . . . . In such
case the injury to the property and business of the employer would
not consist so much in breaking the contract which existed as in
the loss of profits derived from the work of the laborer if he con-
tinued in the employment, and the probability or certainty of such
loss would be, in each case a question of fact."

The same principle has been applied to the procurement, by
wrongful means, of the breach of contracts of sale. For instance,
in the case of *Benton* v. *Pratt*, 2 Wend. 385, the plaintiff had
made an oral contract for the sale of chattels ; the contract was not
enforceable because within the statute of frauds ; the defendant
fraudulently represented that the plaintiff did not intend to carry
out the contract and deliver the chattels and thereby procured a
breach of the contract by the other party to it. It was said by the
court : " It is not material whether the contract of the plaintiff
with Seagraves & Wilson was binding on them or not; the evi-
dence established beyond all question that they would have fulfilled
it but for the false and fraudulent representations of the defendant."

And in *Rice* v. *Manley*, 66 N. Y. 82, (23 Am. Rep. 30), one S
had contracted by parol to sell and deliver to the plaintiff a
quantity of cheese, but being made to believe, by the fraud of the
defendant, that the plaintiff did not want the cheese, sold it to the
defendant. The contract was not binding because within the
statute of frauds, but it would have been performed by S, had it
not been for the fraud of the defendant. The court held that an
action was maintainable against the defendant therefor.

Our conclusion is, that wherever a person, by means of fraud or
intimidation, procures, either the breach of a contract or the dis-
charge of a plaintiff, from an employment, which but for such
wrongful interference would have continued, he is liable in
damages for such injuries as naturally result therefrom ; and that
the rule is the same whether by these wrongful means a contract

of employment definite as to time is broken, or an employer is induced, solely by reason of such procurement, to discharge an employee whom he would otherwise have retained.

The case of *Heywood* v. *Tillson*, 75 Maine, 225, in no way conflicts with this result. There the court simply decided that the defendant was not liable for doing what he had a perfect and absolute right to do, even if in doing this he was actuated by a malicious motive against the plaintiff. Many cases were cited to the effect that "malicious motives make a bad act worse, but they cannot make that wrong which in its own essence is lawful."

We think that the important question in an action of this kind is as to the nature of the defendant's act and the means adopted by him to accomplish his purpose. Merely to induce another to leave an employment or to discharge an employee, by persuasion or argument, however whimsical, unreasonable or absurd, is not in and of itself unlawful, and we do not decide that such interference may become unlawful by reason of the defendant's malicious motives, but simply that to intimidate an employer, by threats, if the threats are of such a character as to produce this result, and thereby cause him to discharge an employee, whom he desired to retain and would have retained, except for such unlawful threats, is an actionable wrong. Nor do we differ from the recent decision of the Vermont court, in the case above referred to, which holds that a threat to do what the defendant had a right to do, would not be such a one as to make a defendant liable in an action of this kind.

It is the opinion of the court, that the plaintiff's declaration fairly sets out a cause of action in accordance with these principles; that the question is one of proof rather than of pleading; and that if the plaintiff can prove the essential allegations contained in his declaration, he is entitled to recover.

*Exceptions overruled.*